The first case for the afternoon is 4090792, State of Illinois CMS v. State of Illinois Labor Relations Board, etc. For the appellant, Owen Stradwiner. For the appellee, Sharon Purcell, you are she. And Alyssa Auerbach, you are she. And are you going to divide up your time? We're going to divide it. I'll be taking 12 minutes per, and you'll be taking an hour and a half. Okay. Mr. Clark, do you have that? Yes, sir. Thank you. Mr. Stradwiner, you may proceed, sir. May it please the court. Counsel. This is the fourth and last pending case regarding administrative law judges. We have 409233 and 234, which were consolidated involving DHFS and DHS ALJs, and then, which was argued February 24th. And then we have the 409721 case involving the Human Rights Commission, which is pending petition for rehearing. I can truly say that I'm absolutely delighted and pleased to appear before you to perhaps elucidate our position a little more clearly to the court and where we stand on these cases. But first, I would like to quote from the brief of the union asked me at page 21. The facts set forth by CMS are also insufficient to show the employees at issue are engaged in directing the effectuation of agency policy. Citation omitted. Rather, such facts show only that the employees at issue are involved in carrying out agency policy. Indeed, CMS in its brief states that the ALJs, quote, to review only by the agency itself. Such description of the ICC ALJs is a description of employees involved in carrying out, dash, not formulating, dash, agency policy. Next, I would like to read a short excerpt from the Supreme Court's decision in the Cook County State's Attorney's case. At page 302, the assistants have a significant managerial role in carrying out the mission of the State's Attorney's Office. I'd like to quote from the second Supreme Court's decision in reviewing these matters by the Chief Judge in the 16th Judicial Circuit case. Wherein the court states in Terrelia, As stated, like the relationship between, and this of course, as you know, deals with the assistant public defenders. As stated, like the relationship between the State's Attorney and his or her assistants, the assistant public defenders act on behalf of the public defender in carrying out the statutory duties of the public defender's office. And truly, that is the gravamen, that is the crux of the issue here. Do these ALJs have to formulate or create the public policy in order to be considered managerial employees? And to that question, the State respectfully submits that clearly and conclusively they do not. Well, if your emphasis is on this verb, carry out, I'm not sure I understand. It seems to me that every person down to the lowest state employee is supposed to carry out the policy set by somebody in that agency. So what, and the language you just described from the Supreme Court's decision strikes me as not being the crux of those decisions at all. So what's the point, Mr. Weiner? Well, I mean, the point is I assume that we're applicable to yourselves, Your Honor. I mean, you carry out, you implement the laws as determined by Congress and by the State. Well, it seems to me, are we talking about independent actors and the exercise of independent discretion? I've been a prosecutor and I've been a judge now for 34 years. As a prosecutor, I have lots more discretion, lots more opportunity to set policy, decide what it's going to do. Even in this court, we are essentially in a passive role. We decide the stuff submitted to us and try to apply the law to it. And I'm wondering how is that different from the ALJs? I'm a little taken aback by the idea we're setting policy. Our job, I think, is to decide the cases and theirs is similarly the same way and further to try to figure out the policy set by the legislature and apply that. But we're not the policy, as a matter of fact, this court has written several times. We are the policy making body of the State of Illinois. Exactly my point. You don't have to be a policy maker in order to be a managerial employee. Let me give you an analysis just for a minute. I'll bring you back to Section 3J first and then I'm going to go through the Supreme Court cases and review them with you. Section 3J, as you know, defines a managerial employee as an individual who is engaged predominantly in the executive and management functions and secondly, which is what is involved here, is charged with the responsibility of directing the effectuation of management policies and practices. How do the ALJs do that? That's what they do. No, they don't. Why aren't they there to resolve cases presented to them of disputes as ALJs? As ALJs? How do they carry out a policy by resolving a dispute? Well, you just take these, they don't create a policy, they effectuate, which means in dictionary terms to give effect to. The act doesn't require that they formulate policy. It doesn't have that word formulation at all. And the Supreme Court, if you'll allow me, Your Honor, says the authority, this is the Cook County State's attorney case, the authority to make independent decisions, that's what's key here. And the consequent alignment of the employee's interest with the management's are hallmarks of managerial status for the purposes of labor law. Managerial employees, quoting from Yeshiva, all the cases quote from Yeshiva, but some of them leave out one last sentence. Managerial employees must exercise discretion within or even independently of established employer policy. They don't set the policy, they don't establish it, they don't create it. They must exercise discretion within or even independently of established employer policy. That's the discussion we exercise as judges as we're resolving these cases. For instance, as a prosecutor I can decide what to charge, whom to charge, which counts, plea bargaining, whether to go to trial. I mean, and reach out, find witnesses, talk to all kinds of people. It's an active executive role. ALJs, we're a passive bunch. You know, don't we decide cases based on what the parties present? Well, first of all, there's the facts, but there's also the law. And you apply like these people, like the ALJs, the HRCLJs, the Human Rights Act, these Commerce Commission people, Public Utility Act, I mean, they actually speak for the agency. They are the surrogates of the agency. They're the ones who apply that law consistent with, and that's the policy that's been established by their commissions, by their agencies. There's policies established. They effectuate those policies. They give effect to them. They implement those policies in applying the facts to them. That's their function. And may I continue with the question? Sure, go ahead. An employee may be excluded as managerial only if he represents management's interests by taking or recommending discretionary actions that effectively control, and here's the key words, or implement employer policy, or disjunctive. So as long as they implement the policy and they do it in a discretionary manner and independently and exercising discretion and their own judgment, that's what makes managers in the context of judges or administrative law judges different than managing an office of 100 people where you're sitting at a desk and managing them. Those standards are not applicable to administrative law judges. These people do not sit at a desk and manage the people there. They're not involved in that. They're not involved in making budgets. They're not involved in all of the criteria that are applicable. Give me some specific examples. The ALJs at the Commerce Commission. What were the kinds of issues that came before them for resolution? If you look at representative examples in this record, there are six decisions, I believe, and they're like a couple hundred pages apiece, and they actually go into a complete analysis with the regulations and the rules and the policies that have been established by the commission, and they make recommendations with regard to detailed analysis as to why there should be this rate or not rate applied. I mean, that is in the record in this case, what they do, and it's quite complex, and they do recommend these things, and these recommendations are almost overwhelmingly almost, and there are exceptions. Before, I don't want to interrupt your straight of thought, but I do want you to address what I thought was the primary issue, which you haven't yet, and which is your claim that you're entitled to a hearing as opposed to just submitting the stuff in memoranda. Oh, well, all right. I think that's been fully briefed as far as the hearing is concerned. I think in the city of Chicago case, I think this really, really lays it out. I think that you have to have a hearing where there's a reasonable, I can quote you from the Chicago case, and they applied it correctly in that case. The board shall investigate such position, and if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing upon notice. So it's the board's position they didn't have reasonable cause to believe here, that they could decide this case based upon written submissions? Yes, they denied a hearing on that. And you requested a hearing? Yes. Now, if you were to be given a hearing, what additional information or evidence or what would you have provided them, what would the hearing have done that the written submissions didn't do? Well, I think the hearing would have probably been more extensive in the sense that there were only six representative illustrations as to what they do presented at the hearing. But I don't, in this particular case, I think those are truly representative of what they do. Well, are you asking that we reverse the commission on the grounds you didn't get a hearing? Well, I've asked that it be reversed and remanded, because I think if you believe, I believe the wrong standard has been applied, the state, I don't personally, the state believes the wrong standard has been applied. That's what I was trying to go into, what's the standard? I just want to talk about the hearing issue for the moment. I was under the impression that one of your fundamental arguments, the key argument was, aside from everything else, we're entitled to a hearing. We're going to get a hearing that should be sent back for that reason. Is that right? Right. That's what the CMS's position was before BBLO, and I support that position. Well, hey, I don't want to put you in a spot, Mr. Weiner, if that's no longer your position, it's okay. But I think that a hearing would just have gone into much more detail as to what they do and how they do it. Well, see, from my point of view, I don't know, this isn't a rhetorical question, I don't know that I'm going to be inclined to reverse and remand for a hearing if it doesn't appear that even if you should have gotten a hearing, there's any error in depriving you of one because essentially they got all they need to get. Well, I can understand your honest position. But that's why I asked, if there's something additional or something more, you know, Gene, we had all these other witnesses and things we wanted to talk about, we didn't get a chance. I could just say that I think there would be testimony as to the procedures, probably testimony as to the actual number, although there's a representation as to what number are adopted by the commission, but we have, you know, an actual number of how many cases they handled and how many were, that kind of analysis. The procedures that they follow in rendering these decisions. But you were able to put it forth in writing for the most part? I think they did a good job in this case in submitting sufficient evidence to prevail. Okay. And by the way, these are, you know, we have similar issues, but these are all different cases. In another case it might have been a different situation, it doesn't affect this one. Right. And I think in this case, those illustrative examples truly, one can glean from those, readily learn actually, the absolute, almost absolute discretion these people have and what they do in terms of applying the law and applying the rules and regulations of their agency, the ICC. So then essentially your position for this court, before I interrupted you, is the argument you were making that they're applying the wrong standards and that these people should be viewed as managerial officers. Right, and I actually think this kind of review is not a, this is an oval review, because you're dealing with the standards of law. What's the law in this? And we have a fundamental disagreement with what the law is in these cases. The fundamental disagreement is, is it a standard to be applied? Do these people, what's happened is that now we have such a narrow exception that there really is nobody that can come within that exception except the people who have been statutorily, already statutorily, like the heads of the departments. They're the only ones that this applies to. So the question here is, what's the standard? And the standard is, I say, is set forth by the Act itself, which just says effectuate, not formulate, and by the Supreme Court's two decisions. The Supreme Court has two decisions in this area. And in both decisions they did not mention anything about establishing policy, formulating policy. To the contrary, they adopted the standard in the Yeshiva case by the Supreme Court of the United States, which had exactly what I said here. They within, they exercised their discretion within, within established employer policy. And then also or, they have recommending discretionary actions that effectively control but keep or implement employer policy, the disjunctive or. And that's not what's happening in these cases. If you look at their arguments, the argument I quoted for you, also the argument by the ILRB. Here's what they say. Exercise final responsibility and independent authority to establish and effectuate policy for the agencies. Nothing in the two Supreme Court decisions say anything about that whatsoever. It was a decision before the Supreme Court decisions and the public court decision which this court relied upon and the decision rendered by Your Honor and the DHFS staff attorneys at the Bureau of Administrative Litigation. But then came the Supreme Court decisions in 1995 and 1997. That's the law that should be applied in these cases. And it isn't because all you have to do is to implement. Here's what the ILRB says. So you have to exercise final responsibility. Who does that? The department head maybe. Maybe not even the department head. Maybe it's the governor's office. In other words, this exception has been so narrowly redefined that the exception includes the rule. I'll give you another one. These are from pages 34, 36, and 39 of their brief. Direct the formulation of each agency's policies over any major aspects of operations. Another one. Could change the focus or mission of the commission. Another one. Requires more than serving in a subordinate or advisory role with respect to formulation of the employer's policies. None of those standards that have been expressed to you as the basis for their arguments are supported by the two Supreme Court decisions in this area. So I think there has to be a reexamination by this court as to what the standard is. There's a second part that I want to bring. In addition to applying that standard the wrong way, as I mentioned a little bit earlier, I had a chance to touch on it, the ILRB and the union have applied the criteria of department heads for the managerial purposes, whether they budget, whether how many people, whether they're establishing the focus of the employer's responsibility for employer's day-to-day operations, to pledge credit, all those things. They don't apply to judges. Judges don't do those things. And requiring them to create a budget or to effectively operate a department is not applicable to judges. They shouldn't be held to those particular standards which are applicable to people. Your time is up, Mr. Reiner. We'll give you a chance to address this again in rebuttal. Ms. Purcell? Your time is up. The red light was on. I'll be back. Thank you. Good afternoon, Your Honors. My name is Sharon Purcell. And I'm representing the state labor relations board in this case. And we ask, first of all, that you will affirm the certification in this case, because the board did not clearly err when it certified these employees, these ICC ALJs into the bargaining unit that they petitioned to be included in. Well, Mr. Reiner raises an interesting point. If the ALJs are included, who isn't? The members of the commission themselves? The board members? Is that it? Well, it's two tests. It has to always be remembered there are two separate tests. And, of course, the first test, the traditional test that's fact-based, and really tracks the definition of the managerial exclusion in the act, in section 3J, which has been interpreted by the board and by the appellate courts time and again since the beginning of the act and you can go back to the early 1990s with the city of Emerson and village of... Will you finish the sentence? I will. You know, it's going to depend on the facts every time. Under the traditional case... Now, how is the managerial, you were saying, has been interpreted by the courts as what? It's a two-criteria test that engages predominantly in executive and management functions and exercises responsibility for directing the effectuation of management policies and procedures. Regarding ALJs, what's the first part of that test? What do they do? Well, the first part of the test is they don't. Okay. So the second part, what do they do there? Well, once they don't meet the first part, they don't meet the test because they have to meet both parts of the test. These employees... Now, the act does not contain any exclusion, particular to attorneys or administrative law judges, doctors, if you want to go off on other cases, employees who are professional. These are professional employees, and they have a right under the act to be included in a bargaining unit. And the idea that because they're administrative law judges and don't do these things, then this can't apply. Well, then you're moving over, it seems to me, into the alternative test because you have to keep those separate. And the alternative test, the Supreme Court has so clearly, in both of its decisions, state's attorney and public defender, that it's narrowly interpreted. And it's these two particular classes of attorneys who are operating basically as officers of the court. The assistant state's attorney can do everything that the state's attorney does in his absence. They are his surrogates. And the same with the public defender. They just have so much authority, and they can act regardless of who is the state's attorney, whether or not they're... They act as, in his shoes. And the state's attorney in that case, the Supreme Court in that case, recognized that it was applying a different test, and it was creating a different test. And it discussed the statute, and it discussed the case law describing what state's attorneys do. And some of it was Seventh Circuit case law, and they're cited in that state's attorney's case. But it specifically... What do assistant state's attorneys do? What do assistant state's attorneys do? They do what they... They exercise discretion. They do exercise discretion. They're pretty much on their own. Right. Case by case, you know, you get assigned a burglary case to prosecute, and you figure out how best to prosecute it. You don't take direction necessarily from anybody. You don't take orders from anybody how to do it. You exercise the discretion of the state's attorney. Of the state's attorney. Okay. How is that different from administrative law judges? An administrative law judge does a particular duty in the larger aspect of what the agency is doing. That duty is when an issue has come before, in this case the Commerce Commission, for a decision on particular issues, how are you going to get to that decision? All the parties are going to come in. Anybody with an interest in this, you know, looking at those commission orders that were submitted. They're very technical, and there's a lot of people who are interested in each one of those. And they take evidence. Following up on Justice Appleton's question, the point I raised with Mr. Weiner, and maybe it wasn't correct, talking about the passive nature of ALJs. In fact, can the ALJs for the Commerce Commission reach out and seek out testimony or evidence or information beyond that which might have been presented by the parties? I think they can ask for additional. I mean, I have to admit I'm not an expert. Would that make a difference? No, because they're still only acting for that particular case. See, this court is an example. We can't say, well, we heard from Ms. Purcell, Ms. Auerbach, and Mr. Weiner, but we want to hear from somebody else. We want to hear, you know, let's invite somebody to come in and talk to us about the issues in this case, because, you know, maybe we're not happy with what we heard from you folks. That's not the way courts work, but the ALJs, if we have the discretion to reach out, then that might be, as I talked about, assistant state's attorneys go out and find additional witnesses and do research and talk to cops or prepare your case. What about that? But I mean, that still is, they're not clothed. They are not decommissioned. They're not clothed with the power to act with the full authority. Well, so much of this is just kind of amorphous, and I'm having a real hard time being concrete about it. If I'm an ALJ at the Commerce Commission, and whatever kind of case, you know, telephone, electric, gas, I don't care what, and there's a complaint brought within the administrative system, I've got to resolve this. I don't necessarily take orders from anybody. I do it however I see best, right? I have to believe that the Commerce Commission has its processes as to what each ALJ is going to do. But they don't dictate the result, do they? I'm sorry? I'm a free actor as an administrative law judge, aren't I? No. No. You have a particular case with particular issues, and the parties are going to bring their positions. I've got six experts on one side and six experts on the other side, and, of course, you know, lawyers are particularly unsuited to understand any of the stuff that, you know, the Commerce Commission deals with. I mean, there's a reason we became lawyers. We're not good at math and science, and these are all engineers. So we're trying to figure all this out, but nobody's telling us how to decide the case, are they? But there's always going to be – I mean, as an ALJ, you do what an ALJ does. You find facts. Exercise your own judgment, right? Well, but then your judgment, it's going to, of course, be shaped by what the facts are that the parties have brought, and it's going to be shaped by – The law? Yes, and so – Kind of like our job? To a degree. Well, what degree is it not like our job? No, but – well, because then they're answering to – in this case, they've got their chief ALJ. All right. And then the case goes up to – So if you've got an ALJ who gets a wild hair and decides in favor of AT&T, where, you know, the staff says AT&T really ought to lose, does that ALJ get canned? I wouldn't imagine that if they – in the exercise of their professional discretion that they are – and, you know, technical expertise that they are supposed to bring to the job. They're professionals. That's why you're – So do we have a problem in the state of Illinois with administrative law judges getting fired because they make unpopular decisions? I have not heard of that, but, you know, the case is going to the commission anyway for their final decision. And if the commission disagrees with the ALJ, you know, it's their duty to – The commission being all political employees who probably know less than the ALJs, who know less than the actual engineer-type people who appear before the ALJs. Whether or not – however anybody is structured, that's legislative. Does it matter that less than 5% of the ALJs' recommended decisions are not followed by the commission? First of all, there's no – there's nothing – I mean, that's a statement that was – that's a general statement given to the board. Based on what – Well, let's assume it's true. Does that matter? Because the reason I mention that is – We're not the last resort. Probably 5% of our cases are reviewed by the Illinois Supreme Court, and maybe they're reversed too. Does that mean we're not a court of last resort? But if the suggestion is that 95% of these are being affirmed because the commission has got this from the ALJ and that's good enough – Well, that just means that they're exercising some extraordinary powers 95% of the time. That's going to be the decision, isn't it? But that would be – but that's still only – even if that's true, that's still only after the commission has looked at it and decided that that's going to be – So our decisions are final only after the Supreme Court of Illinois has decided on POAs and if they've granted a POA affirmed. Because after all, they can – and they do – take our cases on petitions related to appeal and reverse us. It happens maybe about 3%, 4% of the time of all the decisions we resolve. So does that mean that we're not final like the ALJs aren't final? Well, you're final in this structure. I mean, we're talking about administrative. Are they final in their structure? No. No? No. Because even if – the Administrative Law Judges, this is an administrative process that is happening here and the commission is legislatively charged with making these decisions under the Public Utilities Act. Your time is up, Ms. Purcell. Thank you very much. Thank you for your presentation. Ms. Auerbach? May I please the court? Counsel? I'm Melissa Auerbach. I represent AFSCME. With respect to the Cook County State's Attorney and Public Defender cases discussed by counsel for CMS, the Supreme Court in those cases did not make a new, broad new rule that all employees who carry out policy or carry out duties of an agency are managerial. Such an argument would exclude almost all public employees as managerial. Because almost all public employees carry out the policy of their agency. Why did the Supreme Court use that term? The Supreme Court stressed in both cases that its decisions were narrow and limited to the particular employees at issue there and stressed that it wasn't making a whole new definition. And if it did, it would be eliminating the managerial exclusion in the act and just saying anybody can be managerial. Because deputy sheriffs carry out the policy of the sheriff's office and exercise discretion when they make arrests. Ms. Purcell said she did not know. Do you know whether the ALJs can reach out and seek out on their own initiative additional evidence or authority or argument? I'm not sure if they can. Doesn't that make a difference? No, I don't believe it would make a difference because that would, I mean there are agencies where hearing examiners or hearing officers or ALJs have a partial investigatory function where they can call their own witnesses and ask for evidence. And then they're doing an investigatory function to the extent that they do that. And there are a lot of public employees, including state police investigators, who perform an investigatory function, gather evidence, interview witnesses, and are represented for purposes of collective bargaining. So the fact that they may perform an investigatory function or some hearing officers do does not make them managerial. It means they're maybe exercising professional discretion and using expertise, technical expertise, to know what evidence may be required in a given case. But that's not making agency policy. Counsel also referred to the fact that the Supreme Court cases and public defender and state's attorney relied on the U.S. Supreme Court Yeshiva case. But that case also did not create a broad managerial as a matter of law definition. It was a fact-based test. The Supreme Court in that case said that university faculty may be managerial if in addition to determining what they teach, they govern the university. The court didn't say that all, as a matter of law, faculty are managerial. Along the Supreme Court, in Illinois Supreme Court, in the cases state's attorney and public defender didn't say all lawyers are managerial. And if it's interpreted that way, it would be writing a new exclusion in the act for attorneys or for ALJs. And there is no such exclusion. There's no exclusion in the Labor Relations Act that all administrative law judges are excluded. And rather, it's a managerial definition. And so it's a fact-based in each case whether they meet the definition. And the argument that its definition is too narrow, then that should be addressed to the legislature, not to this court. The fact that people who may not have previously thought to be represented are now seeking to be represented. These issues are coming up. It's because people want to be represented. And the determination each time that happens has to be made on the facts of the given case if those people meet the managerial standard. And if they're not charged with making agency policy or directing the infatuation, they're not managerial. These employees have to have highly technical and professional abilities to carry out their duties. With respect to the issue of the right to a hearing, essentially what CMS did in this case is it threw large numbers of paper at the board agent and said that should be enough for a hearing. And they were half a dozen lengthy decisions, which actually are commission orders. They're not actually ALJ recommended orders. They're commission orders. The board agent asked for specific affidavits or evidence discussing the documents submitted and showing how they would support an argument that the managerial definition is met. And that wasn't done in CMS's offer of proof. These lengthy commission orders were submitted. The commission orders state in them that the proceedings were held, that there was an ALJ decision, that there were exceptions, and now this is the commission's order. And there was no evidence submitted to show in any of those cases what exactly the ALJ was. Was there an ALJ report prepared before the commission decision? It's not evident from the offer of proof. So they're not included? They're not included. All that's included are the half a dozen lengthy commission orders. So the record does not show how, if at all, they differed from the ALJ's report? It doesn't show that. It's just there are some conclusory statements that the chief ALJ believes that the ALJs are only reversed in 5%. There were no affidavits. There were no actual statements. There was no comparison of the ALJ orders or the submission of them so that the board agent could compare. And so it's not, it's contrary to the purpose of the Act to allow, you know, to say that just because an employer throws this bunch of paper at the board agent and makes a few statements that there's a right to a hearing. The rights in the Act are the rights to, for the employees, if they want to be represented and submit a petition to be represented, unless there's a narrow, they meet one of the narrow exclusions the employer has the right to raise. Who would be excluded? If we accept your position, who's not, if these people aren't managers at the ICC, who's left as a manager? Well, in addition to the commission, the, by statute and from the papers submitted, there is a chief administrative law judge and there is an executive director. I don't know if there are also others. By statute? Those are both in the statute. That they're managers? Oh, that they're managers? I personally don't know. I don't, it's not in the record. Are they capable of being included in the bargaining unit, too? They haven't been petitioned for. That doesn't answer my question. I actually don't have, don't know enough about that. So they might, you're not prepared to say no? I, it's not part of the record. So then I guess, other than being a member of the ICC, everyone's just, no managers? Well, I'm not arguing it either way, Your Honor. I'm telling you who's left. Well, give me an example of someone who wouldn't be covered. The problem is, as counsel for the board said, it's a fact-based test in any one case. And so it's based on, it has to be based on the facts of each case. You can't give me a single employee that you're confident wouldn't be covered? Anywhere in the state? No, in the ICC. Anyone, any employee of the ICC? My knowledge is actually only based on what's in this record. So you're unfamiliar with that organization? Beyond the record. I mean, it's, you know, I think, I don't want to make a statement when I, the law is that it's supposed to be based on the facts of the record in any one case. Do you think that was the legislative intent, that everyone is going to be subject to collective bargaining except the members of the board? I think the legislative intent is that there's a fact-based test in any, when any petition is filed. I'm just wondering if, you know, this judicial gloss we put on the decisions or the statute has reached the point where the statute has now been overcome. After all, we judges, as I discussed earlier, we're not the policy makers. This means we're supposed to ascertain as best we can the policy of the state of Illinois as provided by the General Assembly and then apply it. Have we been, have we appropriately applied it? If in doing so, over the course of the years, we've reached the point where the only members of the Illinois Commerce Commission who aren't capable of collective bargaining are the members of the board? Is that what the legislature intended? I think the legislature intended to have an extremely narrow managerial exclusion so that most public employees could be organized if they wanted to be. Okay. Thank you, counsel. Mr. Weiner, any rebuttal, sir? Actually, there's nothing in the legislative history that supports the previous argument. In fact, the legislative history indicates, the closing statute indicates from the legislative history that this was, that management had rights, the employers had rights, and the union had rights. Regarding your Honor's inquiry as to whether these ALJs can do evidence independently, specifically under the Public Utilities Act, and it's at five and six in my brief, it says that they do have the power to have an independent investigation, to conduct an independent investigation. So they can take the information submitted to them and seek additional information? Yes, and they can make independent investigations in any manner referred to them, in this case by the Chief Hearing Officer, to take depositions or cause depositions to be taken, to examine witnesses at the hearing. They have tremendous amount of discretion in the statute itself. As to the point as to who's left, no one's left, other than those who are statutorily excluded by Section 3N. Who is that? Employees of the General Assembly of the State of Illinois, elected officials, executive heads of a department, members of boards or commissions, employees of any agency, board, or commission created by the state. That's under 3N. So if that's there, these are the excluded people, there's nobody included other than them, because they're the only ones that can have the ultimate final authority to formulate policy. No one's left. Your Honor, Justice Appleton said in your decision, though I wanted it, that there's a fundamental distinction. Talking about ALJs, while the attorneys in the Bureau of Administrative Litigation are expected to be advocates, the attorneys in the Office of General Counsel are expected to be impartial decision makers. The integrity of the adversary system demands a rigorous segregation of the two functions, referring to the Administrative Law Judge. What are you reading from? I'm reading from Justice Appleton's opinion. In what? In the DHS case involving the attorneys in the Administrative Litigation section, the decision 388, Illinois Act, in 2009. While I'm on that decision, Your Honor, all due respect, the authority that you relied upon predated, as far as judicial authority, predated the decisions of the Supreme Court in both the state's attorneys' case and the public defender cases. I think that the Supreme Court made clear that these are the only cases that the Supreme Court decided on these specific issues. The Supreme Court, I think, made clear as to what the parameters were. Also, there are numerous cases that hold that to be a manager, you don't have to be at the highest level. I mean, that's undisputed, both before the Board and in the courts. Where that line is drawn, there is some amorphousness there, Your Honor. And who draws the line? Well, I think the Board initially draws the line, but it's got to draw the line in conformity with the applicable standard. And if they're imposing a standard, Whereas the applicable standard is amorphous, as you say. No, no, not where the line is maybe amorphous. Well, that's my point. And who draws the line? The Labor Board draws the line. If they're insisting that you have to formulate policy to cross the line, that's not applying the proper standard because they don't have to formulate policy in order to be a manager. They have to implement policy. And if you look at the words, What is the difference between, and let's switch departments because this makes sense to do it this way. The Department of Public Aid, they have ALJs. What's the difference between an ALJ and a caseworker in implementing the Department of Public Aid's policy? Well, I think that the ALJ is a professional in a quasi-judicial capacity that has to perform, examine all the facts, in this case, conduct independent investigations. So does the caseworker. Well, when you're a judge, I think that you are, in this case, you are actually the effective decision maker. You are the board. You are the commission. ALJs and the Human Rights Commission, the sole function of the Human Rights Commission is to perform hearings. And the ALJs are the ones that perform them. They are the surrogates for the commission, except where exceptions are filed. And even where they're filed, as Justice Turner pointed out, and this is set in that case, even where there are exceptions filed, there's an against the manifest way to the evidence standard on review by the commission itself, and there's an extremely small amount of exceptions that are filed. Anyway, so they are effectively the commission. Here, too, these people are effectively the commission. They are the surrogates for the ICC. The commission members don't have time to conduct hearings lasting months involving all sorts of technical expertise. These are the people that they rely upon to perform their function, and it's statutorily that they perform it. Thank you.